**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ARLINDA JOHNS, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 04-CV-4109-JPG |
| | ) | 02-CR-40055-JPG |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

**GILBERT, District Judge:**

This matter is before the Court on petitioner Arlinda Johns' motion to vacate, set aside, or

correct her sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).  Petitioner submitted a memorandum

in support of her motion (Doc. 2) and a pleading she captioned a supplement of law  (Doc. 4).  The

government has responded to these pleadings.  (Doc. 10).  Petitioner has also moved for leave to file

a reply to the government's response (Doc. 11);she filed her reply before the Court ruled on the

motion.  The Court will **GRANT** the motion for leave and consider the reply timely.  For the

following reasons, petitioner's § 2255 motion will be **DENIED**.

<u>**BACKGROUND**</u>

On February 13, 2003, petitioner entered an open plea of guilty to a one-count indictment

charging her with conspiracy to distribute at least five grams of crack cocaine in violation of 21

U.S.C. § 841(a)(1).  Petitioner was originally represented by retained counsel Paul Christenson.

This Court granted Christenson's motion to withdraw and Federal Public Defender Melissa Day was

appointed and took his place.  After petitioner entered her plea, the United States Probation Office

("probation") prepared a Presentence Investigation Report ("PSR") setting forth her relevant

conduct, which consisted of 270.37 grams of crack cocaine. The PSR recommended a two-level enhancement for possession of a weapon during the commission of the offense pursuant to U.S.S.G. § 2D1.1.(b)(1) (02-40055 Doc. 48). Petitioner objected to the two-level firearm enhancement (02-40055 Doc. 44), but withdrew it at sentencing. (Sent. Tr. at 3). Her relevant conduct rendered a base level offense of 34; she received the two-point enhancement for the firearm possession and she received a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). Petitioner's total offense level was 33 (criminal history category II), making her guideline range 151 to 188 months. The Court sentenced petitioner to a term of imprisonment of 151 months, 5 years' supervised release, a $50 fine and $100.00 special assessment. (02-40055 Doc. 46).

Petitioner appealed her conviction. Believing her client's position to be frivolous, Day filed an appellate brief and moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967). *United States v. Johns*, 79 Fed.Appx. 223, 224 (7th Cir. 2003). In her *Anders* brief, Day addressed whether petitioner could challenge the voluntariness of her guilty plea, whether she could challenge her sentence on the basis of the firearm enhancement (this issue was also raised in petitioner's Rule 51(b) response), whether the government's failure to move for a downward departure was irrational or discriminatory (also argued by petitioner to the appellate court) and whether petitioner received ineffective counsel. *Id*. at 224-26. Petitioner also argued in her Rule 51(b) response that she withdrew her objection to the firearm enhancement pursuant to the bad advice of Day. The Seventh Circuit did not address this issue believing it was best reserved for collateral attack. *Id*. at 225. Petitioner also challenged the determination of her relevant conduct in the PSR. The Seventh Circuit determined this argument to be frivolous because both petitioner and her attorney indicated at sentencing that they agreed with the PSR. *Id*. After considering the arguments made by counsel and

-2-

petitioner, the Seventh Circuit dismissed the appeal.  *Id*. at 226.

Having reviewed the briefs filed by the petitioner in this case, the Court finds that petitioner has stated eight grounds for relief in her § 2255 filings.  She claims Day provided ineffective assistance of counsel by (1) failing to advise her of the consequences of withdrawing her firearm enhancement objection, (2) failing to object to perjured testimony by the Assistant U.S. Attorney, Amanda Robertson, (3) failing to challenge her relevant conduct, (4) failing to file motions for a downward departure, (5) failing to demand a downward departure for substantial assistance, and by (6) failing to present mitigating evidence at sentencing.  She also claims her sentence is invalidated by (7) *Apprendi* and (8) *Booker*.  The Court will address of each of these arguments in turn.

## ANALYSIS

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  Relief under § 2255 is available only if an error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

A § 2255 motion does not substitute for a direct appeal.  A defendant cannot raise in a § 2255 motion constitutional issues that she could have but did not raise in a direct appeal unless she shows good cause for and actual prejudice from her failure to raise them on appeal or unless failure to

consider the claim would result in a fundamental miscarriage of justice.  *Massaro v. United States*, 538 U.S. 500, 504 (2003);  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977);  *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000);  *Prewitt*, 83 F.3d at 816.  A defendant cannot raise in a § 2255 motion nonconstitutional issues that she failed to raise on direct appeal regardless of cause and prejudice.  *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000).

A § 2255 motion is also not necessarily a second chance at a successful appeal.  The Court may refuse to consider issues in a § 2255 motion that a defendant raised on direct appeal where there are no changed circumstances of fact or law.  *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992).  To succeed on her ineffective assistance of counsel claims, petitioner must establish that Day's performance "fell below an objective level of reasonableness" and that her error(s) prejudiced the outcome of the proceedings. *United States v. Allender*, 62 F.3d 909, 913 (7th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  In addressing Day's performance, this Court should defer to her decisions and presume she acted reasonably.  *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). To show that her attorney's performance was objectively unreasonable, petitioner bears the "heavy burden" of showing that it fell well outside the range of professionally competent representation. *United States v. Moya-Gomez*, 860 F.2d 706, 763-64 (7th Cir. 1998).  In reviewing her arguments on this score, the Court must consider the reasonableness of Day's actions "in the context of the case as a whole, viewed at the time of the conduct, and there is strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies."  *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (internal citations and quotations omitted).  In determining whether Day's actions were reasonable, it is not the Court's place to "second guess strategic choices."

*Williams*, 106 F.3d at 1367.

To make her showing on the prejudice prong of the *Strickland* test, petitioner must show with a "reasonable probability" that without counsel's error the result of the proceeding would have been different and that the error made the proceeding unfair or unreliable. *Id.* at 699. In this context, a reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Emezuo v. United States*, 357 F.3d 703, 708 (7th Cir. 2004) (quoting *Strickland*, 466 U.S. at 694). In evaluating these issues this Court must keep in mind that "the ultimate objective [of our legal system is] that the guilty be convicted and the innocent go free." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996) (citation omitted). Finally, the Court need not evaluate both prongs of the *Strickland* test; "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 697).

### A.     The Firearm Objection

Petitioner's first ineffective assistance claim relates to the dangerous weapon enhancement. Essentially, she claims Day provided ineffective assistance for failing to apprise her of the consequences of withdrawing her initial objection. As detailed in the PSR, petitioner received the enhancement under § 2D1.1 because her co-defendant, Lorenzo Erving ("Erving") told authorities that she had possessed .9mm and .38 caliber pistols during several drug deals at which he was present. While searching her residence, law enforcement found a box of .9mm shells and two .32 caliber shells. Thus, the PSR recommended the two-point enhancement. That petitioner had some problem with the inclusion of the firearm enhancement is evident from the fact that she initially lodged a complaint against its inclusion in the PSR. She believed then and believes now that Erving

made the statements about the guns in retaliation for her setting him up.  However, petitioner withdrew her objection to the gun enhancement at sentencing on Day's advice.  Day told her that the government would not recommend the full three-level reduction for acceptance of responsibility if she did not withdraw her objection. Day explained that her guideline range without the full reduction would be 210 to 262 months, substantially higher than her eventual guideline range, 151-188 months.  Petitioner claims Day assured her that the firearm enhancement would be something she could fight on appeal.  (Doc. 2 at 5).  For these reasons she withdrew her objection to the enhancement.  Now, petitioner claims Day should have fought the enhancement because it was based on the unsupported hearsay testimony of someone with an obvious vendetta against her.

When the agents searched petitioner's house, they found crack cocaine, cash, ammunition (including a box of .9mm shells), razor blades and a digital scale.  During one of the controlled buys leading to the indictment, one of the agents involved, Stan Reno, overheard petitioner tell a confidential source that she was trying to obtain a FOID card to purchase more bullets.  The government claims this information strongly supported the Court's application of the enhancement. Further, the government points to the fact that after her arrest for selling crack to a confidential source, officers found a lock-blade knife on her person.  (Doc. 10 ex. B at ¶11) (02-40055 Doc. 48 at ¶ 16).  Additionally, in her proffer of January 21, 2003, petitioner admitted to carrying a bat in the trunk of her car.  (Doc. 10 ex. B at ¶ 11).  Petitioner believes that these facts would have failed to support the enhancement if the government would have offered them in the alternative to the guns.  She points the Court to the fact that when she was arrested on October 1, 2002, the day the police found the knife in her possession, she did not have drugs in her possession.  Thus, she claims the government cannot prove the requisite nexus between her possession of the knife and drug

activity.

U.S.S.G. § 2D1.1(b)(1) provides for a two-level enhancement if one possesses a dangerous weapon (including a firearm) during the commission of a drug crime.  Whether something is a "dangerous weapon" in this context depends on whether a reasonable person "would have regarded the object that the defendant . . . possessed as a dangerous weapon, capable of inflicting death or serious bodily injury." *United States v. Hart*, 226 F.3d 602, 607 (7th Cir. 2000) (internal quotation and citation omitted).  As Day's correspondence with petitioner shows, Day advised her of this fact, the potential result of her failure to withdraw her objection and other information relevant to her decision to withdraw the objection.  (Doc. 10 Ex. C at 18-19).  As the Court understands her argument, petitioner would have maintained her objection to the PSR if she had not received the bad advice from Day.   Perhaps if the only dangerous weapon evidence came from Erving's statement about the guns, the Court might be persuaded that Day should have counseled her client otherwise. *But see, e.g., United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005) (noting that a judge is free to consider a wide range of evidence at sentencing including hearsay). But even if she was not found with a knife in her possession and she had not made the statement about the bat, the fact that .9mm shells were found in her residence lends some credence to Erving's statements, at least as they pertained to her possession of a .9mm. *See id.*  If Day had objected, the enhancement might still have been supported by the other evidence.  Whether the government could have proved the requisite nexus with the knife and her drug activity is unknown.  The Court does note, however, that petitioner was arrested and found with the knife prior to an arranged controlled buy of crack cocaine.  Further, petitioner herself admitted to carrying a bat in the trunk of her car.  At bottom, it cannot be forgotten that her claim is one of ineffective assistance of counsel.  Thus, the Court must look to the

reasonableness of Day's actions at the time.  Given the three separate accounts of her disposition to carry weapons during drug deals  – her own given in her proffer, Erving's (which was supported by the presence of .9mm ammunition at her residence) and the fact that the authorities found a knife in her possession before a planned controlled crack cocaine buy – the Court cannot conclude that Day's advice to drop the objection was objectively unreasonable.  Further, petitioner fails to address the fact that she probably would have lost at least part of the acceptance of responsibility reduction. For these same reasons, the Court finds that petitioner has failed to show the requisite prejudice and unfairness as well.  If she would have persisted in her objection it is likely she would not have received the full three-point reduction for acceptance of responsibility.  Given the other evidence which could have supported the dangerous weapon enhancement, the Court will not characterize her receipt of the enhancement as fundamentally unfair, or sufficient to undermine its confidence in the outcome of the proceedings.

### B.    Robertson's "Perjured" Testimony

As her second ground for relief, petitioner argues that Day provided ineffective assistance because she failed to object to an allegedly perjurious statement made by AUSA Robertson at sentencing.  At petitioner's sentencing hearing, Robertson made the following statement

> Paragraph 16 sets out a search of defendant's residence.  There's .38 ammo in the kitchen, .9 millimeter ammo in the master bedroom.  But the important thing about this search and what is consistent throughout this case is what's located in the defendant's kids's bedroom.  In the kids's bedroom closet is a drug scale.  In the kids's bedroom closet is a razor blade, and in the kids's bedroom closet is a rock of crack cocaine.

Sent. Tr. 8-9.  The government concedes that counsel misspoke; agents found .32 ammo, not .38. Petitioner claims the statement concerning the .38 ammo was perjurious because no .38 ammo was found.  She believes Robertson intentionally lied to the Court to support Erving's claim that she

possessed a .38 caliber pistol during her drug dealing activities.  The government, on the other hand, claims the statement was a mere oversight and that it was not done with any underhanded motive. Further, the government claims it would have been unwise for Day to object to this statement because it would have drawn attention to the fact that petitioner kept drugs and razor blades in her child's bedroom.   In her brief, petitioner makes a considerable effort to show that Erving's statements were demonstrably false and that he had a great motive to lie.  In the Court's view, however, these factual disputes are irrelevant.  As this claim sounds in ineffective assistance, she must show how Day's failure to object to Robertson's statement was objectively unreasonable, changed the outcome of the proceedings and made her sentencing unfair.  For similar reasons to her first ground, the Court finds that she has not made this showing.  In the first place, the discussion above shows that there were independent grounds to support the imposition of the dangerous weapon enhancement and other corroborating information supporting Erving's statements. Additionally, Robertson could just as well have said that petitioner possessed .9mm shells – which she most assuredly did.  Thus, this statement cannot be characterized as outcome determinative or constitutionally unfair.  Furthermore, as the Court sentenced her at the low-end of the guideline range applicable to her offense, it is hard to see how this statement negatively affected her sentence. More importantly, the Court reads and is familiar with the contents of PSRs before sentencing. Thus, whatever Robertson's intent with regard to the misstatement, the Court had read the PSR and was aware that agents found .32 caliber shells and not .38.  Also, Day's failure to object can reasonably be characterized as a strategic or tactical decision.  As the government argues, Robertson was in the middle of an argument trying to persuade the Court to sentence petitioner to a term in the middle of the guideline range.  In support of this position, she was drawing attention to the fact that petitioner

-9-

had kept drugs and paraphernalia in her child's bedroom.  Any objection in the course of this presentation would have certainly drawn more attention to those necessarily harmful facts.  Also, common sense suggests that Day did right by petitioner.  As the government was pushing for a sentence in the middle of the guideline range and she received a sentence at the low end of the range it is reasonable to credit her attorney with having a positive effect on her eventual sentence.  As such, the Court finds that Day's failure to object was not objectively unreasonable.  Further, the Court finds that petitioner has not demonstrated how Day's failure to object prejudiced the outcome of the proceedings.  She has failed to meet either prong of *Strickland* on this ground.  Her claim on this issue is without merit.

### C.    Day's Failure to Challenge Petitioner's Relevant Conduct

Petitioner claims Day's failure to take issue with the relevant conduct determination in the PSR constituted ineffective assistance.  As detailed more fully in the PSR, the Probation Office determined petitioner's relevant conduct based on her statements to police after her arrest.  (02-40055 Doc. 48 at ¶¶ 16-24).  The Court need not detail the precise statements she made but based on those statements Probation determined her relevant conduct to be approximately 270 grams of crack cocaine. To begin, like the Seventh Circuit, the Court finds it difficult to give much credence to her argument on the relevant conduct detailed in the PSR as petitioner herself indicated at sentencing that she agreed with that information.  *Johns*, 79 Fed.Appx. at 225; (Sent. Tr. at 2-3). Though petitioner admits she willingly made these statements to law enforcement, she claims that probation should not have used them for the relevant conduct determination because the government had deemed some portions of the statements untruthful.  Because she made essentially the same statements in her attempted proffer of January 21, 2003, and the government rejected her proffer,

-10-

it is unfair for these statements to be used in the PSR.  This argument is frivolous and the Court rejects it.  Petitioner is asking the Court to disbelieve statements she admits she made willingly in favor of her contradictory contentions in her § 2255.  She has shown no persuasive reason why the Court should disregard her first statement.  She has not presented the Court with any information or explanation which tends to show that her post-arrest statement was not sufficiently reliable for sentencing purposes.  *See, e.g., United States v. Szakacs*, 212 F.3d 344, 352 (7th Cir. 2000).  In any event, as the Court in *Szakacs* noted, statements against penal interest "have long been considered reliable enough for use at trial under the Federal Rules of Evidence."  *Id*. at 352-53.  Further, that agents did not deem her proffer acceptable does not necessarily mean they discredited the specific statements used to calculate her relevant conduct.  According to one of Day's letters to petitioner, the agents deemed her proffer unacceptable because "they did not believe that [she was] completely truthful and forthcoming with them." (Doc. 10 Ex. B at 13).  Perhaps they thought she was dealing more drugs than she admitted after her arrest, or maybe they thought she did not provide sufficient information relating to the unindicted members of her distribution network.  Petitioner certainly does not include any detailed reasons for the rejection of her proffer.  Thus, the Court does not believe the petitioner has met her burden of proving that relevant conduct determination was indeed unreliable.  As she has not shown how that determination was unreasonable, she cannot show how Day's failure to object prejudiced the outcome of the proceedings, nor why any objection made by Day on this issue would not have been frivolous.  *See Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005).

As she has couched this argument under the ineffective assistance rubric, she would put the onus on her attorney to object to the PSR – which she herself told the Court was correct. (Sent. Tr.

2-3).  If Day would have made this objection, it is quite probable that to support this objection petitioner would have had to take the stand to testify that the officers who interviewed her were lying or that she lied to them.  Further, as Day advised petitioner in one of her letters, making an objection along these lines might very well have resulted in the loss of her three-point acceptance of responsibility reduction or might have opened the door for an obstruction of justice enhancement. Thus, the Court finds that Day's failure to object to the relevant conduct determination was a reasonable strategic decision grounded in very real concerns.  The Court is unwilling to say that Day's conduct fell outside the boundaries of objective reasonableness.  Further, because an objection would probably have subjected her to an increase in her guideline range, she has similarly failed to meet the prejudice prong of *Strickland*.

### D.      Day's Failure to move for a Downward Departure

As her fourth ineffective assistance claim, petitioner cites Day's failure to move for a downward departure from her guideline range.   She claims that her extraordinary family circumstances – her being the sole provider of eight children, supporter of a sister with serious drug addiction problems and cancer– her young age, and her status as a college student were sufficient grounds for a motion on Day's part.  She also claims her criminal history was over-represented and that her behavior here was aberrant.  The Court was familiar with petitioner's family situation and educational background from the PSR.   (02-40055 Doc. 48 at ¶¶ 53, 54, and 66). The Court discounted these arguments at sentencing in its statements from the bench.   (Sent. Tr. 20). Petitioner received a sentence at the low-end of the guideline range.  Perhaps a reasonable attorney in Day's position would have requested a downward departure, perhaps not.  The Court need not make this determination however because it does not believe petitioner can establish that Day's

-12-

failure to move for a downward departure made the proceedings unfair in any way.  The Court was aware of the facts that petitioner claims counsel should have made.  As for the other grounds, Day could not have been ineffective for failing to move for a downward departure for aberrant behavior.  Petitioner did not qualify for such a departure because her offense constituted a serious drug trafficking offense and she had more than one criminal history point.  U.S.S.G. § 52.20(c)(3) & (4).  Further, petitioner's claim that her criminal history calculation did not accurately reflect her past conduct is similarly unfounded.  The Court does not believe that her criminal history category of II over represented her criminal history here; she was significantly involved with the distribution of crack cocaine over a substantial period of time while on court supervision for her previous marijuana offense. The Court rejects this claim as well.

> **E.**  **Day's Failure to Request the Court to Compel the Government to File a 5K.1 Reduction for Substantial Assistance**

Petitioner believes the government failed to request a downward departure for her substantial assistance because she is black.  Because she believes the government impermissibly discriminated against her because of her race, she claims Day was ineffective for failing to request that the Court compel a 5K.1.1 downward departure.   Under these circumstances, the government has broad discretion to withhold a 5K1.1 motion.  *United States v. Lezine*, 166 F.3d 895, 900 (7th Cir. 1999).  A prosecutor's decision not to file such a motion can only be reviewed if a defendant makes a threshold showing of an unconstitutional motivation for that decision.  *United States v. Kelly*, 14 F.3d 1169, 1177-78 (7th Cir. 1994).  Defendant believes that her help was so beneficial to the authorities in this case that their failure to file the downward departure can only be based on race.  She points the Court to the facts that she agreed to wear a wire in order to help the authorities with their case against Erving.  She reminds the Court that she wore the wire and taped him facilitating

-13-

a trip to buy crack in Chicago and that she loaned him money with which to purchase the drugs.  In support of her race-based argument, she tells the Court how Erving's girlfriend Stephanie Pickles, who was white, had knowledge of her boyfriend's activities and helped him transport and hide drugs during the course of his drug runs.  As the government chose not to indict Pickles, but refused to move for a 5K1.1 reduction for petitioner, this inconsistency can only be based upon unconstitutional racial animus.  The Court does not believe that this evidence is so persuasive that Day's failure to demand a 5K1.1 departure can be seen to fall well outside the confines of objectively reasonable professional conduct.  In its response, the government argues that an objection on this score would have been meaningless because petitioner did not meet the requirements for a departure – for the reasons discussed by the Court while addressing the previous claim.  It contends that the government did not have enough evidence to indict Pickles and that this is the sole reason she was not indicted.  According to the government, the only evidence regarding Pickles' involvement in this case was Erving's statement that Pickles had stashed cocaine in a baby's diaper when Erving was arrested.  This is a classic he-said, she-said situation where Erving said Pickles did the stashing and Pickles said Erving did the stashing.  For this reason, the government claims it did not have enough evidence to go forward with the indictment.  Besides, the government claims it did not give a 5K1.1 recommendation for a very good reason, petitioner's failure to provide a truthful and complete account of her drug activity and involvement at her proffer.  Thus, Day cannot have been ineffective for failing to demand a reduction for a defendant the government deemed to be incredible.  The Court finds that petitioner does not now and did not then have enough information to make the threshold showing of unconstitutionality under *Kelly*. The government's stated reasons for rejecting her proffer and reasons for failing to indict Pickles

would almost certainly have trumped petitioner's flimsy, if not completely baseless, ascription of an unconstitutional motive to the government.  Further, given her criminal history and her statements detailing her involvement in dealing and procuring crack cocaine, the Court finds that her situation is hardly analogous to that of Pickles.  Again given this information, it is exceedingly unlikely the Court would have lent any credence at all to her claims of bad faith and racial animus.  Again, petitioner has failed to meet either prong of the *Strickland* test.

F.    **Day's Failure to present Mitigating Evidence at Sentencing**

In her final ineffective assistance claim, petitioner argues Day failed to present mitigating evidence to the Court during the sentencing.  This is an argument that she largely abandons in her briefs in support of her motion.  In any event, the record shows that Day did present mitigating evidence to the court. (Sent. Tr. 9-14).  Day explained petitioner's family situation, her honorable discharge from the military, her schooling and other factors in an effort to obtain a lower sentence for her client.  (Sent. Tr. 9-14). One might reasonably assume that her arguments  were effective insofar as the Court sentenced her at the low end of the guideline range.  In any event,  like her five previous ineffective assistance claims, the Court finds that she has failed to demonstrate the requisite prejudice.  Day made arguments to mitigate her sentence, and she got a sentence at the low end of the range.  This claim is frivolous.

G.    ***Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005).**

Petitioner's *Blakely* and *Booker* claims are similarly meritless.  *Blakely* plainly does not apply to this case because her conviction became final before January 12, 2005.  *United States v. McReynolds*, 397 F.3d 479, 481 (7th Cir. 2005).  In any event, *Apprendi* does not require vacatur here because the Court's finding on her relevant conduct did not increase her term of imprisonment

-15-

beyond her statutory maximum.  *United States v. Williams*, 410 F.3d 397, 401 (7th Cir. 2005).

## CONCLUSION

After reviewing the motions and the record in this case, the Court does not believe that an evidentiary hearing in this matter is needed.  As previously stated, Petitioner's motion for leave to file reply (Doc. 11) is **GRANTED**.  For the foregoing reasons, petitioner's § 2255 motion (Doc. 1) will be **DENIED** and this case is **DISMISSED WITH PREJUDICE**.  Because petitioner has failed to make a substantial showing of the denial of a constitutional right, any request for a certificate of appealability is **DENIED**.  *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

**Dated: March 29, 2006.**

  /s/ J. Phil Gilbert
**J. PHIL GILBERT**
**U.S. District Judge**